CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

April 22, 2026

LAURA A. AUSTIN, CLERK
BY:  s/J.Vasquez
        DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **JERRY LEE HAIRSTON,** | ) | **Case No. 7:24-cv-00434** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **DEPUTY MYERS et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OPINION**

Plaintiff Jerry Lee Hairston, a Virginia inmate acting *pro se*, filed this action pursuant to

42 U.S.C. § 1983 alleging federal constitutional claims arising from events that occurred while

he was detained at the Henry County Adult Detention Center in Martinsville, Virginia. Dkt. 1.

Hairston names Deputy Myers, Lieutenant Clark, and Sheriff Wayne Davis as Defendants. Myers

filed an answer (Dkt. 21), and Clark and Davis filed a motion to dismiss for failure to state a

claim (Dkt. 22) which is **GRANTED**.[1]

I.      **Standard of Review**

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[1] In one of his responses to the motion to dismiss, Hairston states that he "wish[es] to drop
Sheriff Wayne Davis from this case." Dkt. 44. However, this Opinion addresses the claims
against Davis on the merits and dismisses him without prejudice. Should Hairston decide to file
an amended complaint, he may rename Davis only if he is able to plead facts sufficient to
support a cognizable claim.

defendant is liable for the misconduct alleged." *Id.* However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"[C]ourts are obligated to liberally construe *pro se* complaints, however inartfully pleaded." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 540 (4th Cir. 2017) (citation modified) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). Liberal construction is particularly important when *pro se* complaints allege civil rights violations. *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). "A *pro se* plaintiff still must allege facts that state a cause of action." *Scarborough v. Frederick Cnty. Sch. Bd.*, 517 F. Supp. 3d 569, 575 (W.D. Va. 2021).

## II.    Facts

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Additionally, courts in the Fourth Circuit frequently consider facts alleged by *pro se* plaintiffs even if they are improperly alleged outside of the complaint.[2] *See, e.g.*, *Garrett v. Elko*, No. 95–7939, 1997 WL 457667, at *1 (4th Cir. 1997) (citing *Gordon v. Leeke*, 574 F.2d 1147, 1149–51 (4th Cir. 1978)); *see also Smith v. Blackledge*, 451 F.2d 1201, 1202 (4th Cir. 1971) (noting that "claims . . . set out in a 36-page, handwritten document . . . denominated as one to 'Further Particularize' the complaint [and] regarded by the District Judge as merely a response to defendants' motion to dismiss . . . should have been

---

[2] Fed. R. Civ. P. 12(d) provides that, if matters outside the pleadings are presented to the court on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must treat the motion as a motion for summary judgment under Fed. R. Civ. P. 56. That is distinct from the approach taken here, which is a liberal construction of pro se civil rights allegations.

considered an amendment to the complaint"). In this vein, I consider the original complaint (Dkt. 1), along with the handwritten documents titled "Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss for Failure to State a Claim" (Dkt. 41) and "Motion to Dismiss Defendant's Memorandum in Support of Motion to Dismiss" (Dkt. 44),[3] collectively as "the Complaint." Hairston alleges the following facts giving rise to his claims.

During the time of the alleged events, Hairston was held at the Henry County Adult Detention Center on an Emergency Custody Order pending evaluation for conditional release. Dkt. 1. On April 22, 2024, shortly after 7:00 p.m., Deputy Myers was collecting dinner trays when Hairston and two other inmates asked him to turn on the television and distribute electronic tablets to authorized inmates. *Id.* Myers refused, telling them to wait until 8:00 p.m. *Id.* Over the next hour, Myers made additional rounds but again refused to distribute tablets or summon a supervisor when asked. *Id.*

When Myers finally indicated it was 8:00 p.m., he retrieved the tablets and began distributing them. *Id.* As Hairston knelt at the tray slot to receive his tablet, a separate dispute erupted between Myers and another inmate, Cox. *Id.* Hairston asked Myers whether he was withholding his tablet because Hairston had asked to see a lieutenant. *Id.* In response, Myers tossed Hairston's tablet through the tray slot, striking him in the face. *Id.*

Myers then touched Hairston's hand, and Hairston asked why Myers was touching him. *Id.* Myers grabbed Hairston's hand and twisted his arm, forcing Hairston's face to the floor and

---

[3] Hairston's response memoranda were received and docketed approximately two weeks after the extended deadline to respond to Defendants' motion to dismiss. Defendants request, in their reply, that the Court dismiss Hairston's claims with prejudice under Federal Rule of Civil Procedure 41(b) based on Hairston's failure to timely respond. I decline to do so and will consider Hairston's filings given his status as a *pro se* litigant. *See e.g., Young v. Madison*, No. 7:23-CV-00260, 2024 WL 4143853, at *5 n.4 (W.D. Va. Sept. 11, 2024).

bending Hairston's arm back to his wrist. *Id.* When Hairston tried to pull free, Myers twisted his arm further before shoving it back through the tray slot and closing slot. *Id.* Hairston had preexisting rheumatoid arthritis in his shoulders with limited range of motion. Dkt. 41.

After forcing Hairston back into his cell, Myers walked to Cox's tray slot and pepper sprayed Cox through it, remarking, "[N]ow you have a real reason to see a Sgt. or Lt." Dkt. 1. Hairston pressed the emergency call button, but no one came for at least twenty to thirty minutes. *Id.*; Dkt. 41. When Lieutenant Clark eventually arrived with three deputies, the officers only addressed Cox. Dkt. 1. Hairston told Clark he had been assaulted by Myers. *Id.* He asked Clark to review the camera footage and requested medical attention, a grievance form, and Myers's full name. *Id.* Clark told Hairston to see the nurse during medication rounds, declined to provide Myers's name, and said someone would interview Hairston after he reviewed the footage. *Id.* Hairston believes Myers did not report the use of force to any supervisor. *Id.*

Around 9:30 or 10:00 p.m., the nurse made her rounds and submitted a request for Hairston to receive X-rays of his shoulder and neck. *Id.*; Dkt. 41. Around 3:00 a.m., Hairston received a grievance form. Dkt. 1.

At approximately 9:00 a.m. on April 23, 2024, Sergeant Golden took Hairston for X-rays. *Id.* Hairston also received ibuprofen for his shoulder and neck pain. *Id.* Golden told Hairston that Clark had revoked tablet privileges for both Hairston and Cox. *Id.* Around 12:00 p.m., Hairston filed a grievance. *Id.* When Hairston later asked Sergeant Gray to speak with Clark about his tablet privileges, Gray told him that would not happen, that Hairston would receive a disciplinary charge for blocking the tray slot, and that he would be placed on prehearing detention. *Id.* Later that day, Sergeant Wilson came by and told Hairston he had reviewed the footage but there was

nothing he could do because Hairston was already housed in Administrative Segregation as a civil detainee. *Id.* In any event, Wilson declined to serve any disciplinary documents. *Id.*

From April 23 to 28, 2024, Hairston was denied tablet access. *Id.* Hairston alleges that an inmate held in prehearing detention for more than 72 hours is entitled to have the Chief Correctional Officer or a designee review the incident report, but that no such review occurred. *Id.* Hairston remained on prehearing detention for five days without any formal disciplinary action. *Id.*

On April 29, 2024, Hairston was transferred to Martinsville City Jail, where he continued to be housed in Administrative Segregation as a civil detainee. *Id.* Hairston alleges this transfer was retaliatory and that it delayed his medical care and prevented him from continuing the grievance process. *Id.* Hairston did not see a doctor until May 29, 2024. *Id.* Medical staff at Martinsville City Jail requested his X-rays from the Henry County Adult Detention Center but received no response. *Id.* Hairston was given medication for pain and discomfort. *Id.* He alleges the injury has limited the range of motion in his shoulder and neck, that he cannot sleep on his left side, and that his shoulder can no longer support his weight for a pushup. *Id.*

Hairston brings Eighth and Fourteenth Amendment claims against Myers based on Myers's use of force, First[4] and Fourteenth Amendment claims against Clark for removal of privileges and transfer to Martinsville City Jail, and Fourteenth Amendment claims against Davis for failure to investigate the alleged assault and Hairston's other grievances. *Id.*; Dkt. 41.

---

[4] In his initial Complaint, Hairston alleges that his transfer to Martinsville City Jail was "a clear reprisal," Dkt. 1 at 8, but does not explicitly assert a First Amendment retaliation claim. Only in his responses does Hairston frame the transfer as retaliation for filing a grievance in violation of the First Amendment. Because Hairston is proceeding *pro se*, I construe his Complaint liberally and read the allegation that the transfer was "a clear reprisal" to implicate a First Amendment retaliation theory and analyze it accordingly.

Hairston seeks declaratory judgment, $50,000 in compensatory damages against each Defendant, and $50,000 in punitive damages against each Defendant. Dkt. 1. Myers filed an answer, and Clark and Davis filed a motion to dismiss.

### III.    Analysis

#### a.   Hairston's Claims Against Lieutenant Clark

##### 1.   Due Process Based on Deprivation of Tablet Privileges

Hairston alleges that Clark violated his due process rights by directing that his tablet privileges be revoked following the April 22, 2024, incident, without serving or adjudicating any infraction, and against the Henry County Adult Detention Center's own rules and regulations governing the deprivation of privileges during prehearing detention.

To state a procedural due process claim under the Fourteenth Amendment, a plaintiff must first identify a protected liberty or property interest of which he was deprived. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Due Process Clause does not protect every benefit or privilege that a governmental institution chooses to provide. A protected liberty interest may arise from the Constitution itself or from state law or regulation, but only where the interest is of "real substance" and the deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 480, 484 (1995).

Hairston does not have a constitutionally protected liberty or property interest in access to an electronic tablet. Courts have consistently held that privileges such as access to tablets and other electronic devices are not a protected interest under the Due Process Clause, even where such privileges have been administratively approved. *See, e.g.*, *Perkins v. Newcomer*, No. 7:23-CV-00074, 2024 WL 4295261, at *6 (W.D. Va. Sept. 25, 2024). The fact that the Henry County

Adult Detention Center extended tablet access to Hairston and maintained a policy governing the conditions under which that access could be revoked does not transform the privilege into a constitutionally cognizable entitlement. *See Grimm v. Jackson*, 849 F. Supp. 1127, 1132–33 (W.D. Va. 1994) (explaining that prison policies concerning discretionary privileges do not create any protected liberty interest), *on reconsideration* (Feb. 23, 1994), *aff'd in part, appeal dismissed in part sub nom. Hill v. Jackson*, 64 F.3d 163 (4th Cir. 1995). Nor does Clark's failure to comply with internal procedural requirements—standing alone—give rise to a due process violation. *See Riccio v. Cnty. of Fairfax.*, 907 F.2d 1459, 1469 (4th Cir. 1990). Hairston's due process claim premised on the revocation of his tablet privileges therefore fails to state a claim upon which relief can be granted.

### 2.   Retaliation Based on Transfer to Martinsville City Jail

Hairston alleges that his transfer from the Henry County Adult Detention Center to Martinsville City Jail on April 29, 2024, was retaliation for filing his grievance, delayed his medical care, and prevented him from pursuing the grievance process.

To state a First Amendment retaliation claim, a plaintiff "must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) (citation modified) (quoting *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017)). Filing a grievance constitutes protected conduct under the First Amendment. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017).

It is well established that inmates have no constitutional right to be housed in any particular facility. *Meachum v. Fano*, 427 U.S. 215, 224 (1976). However, prison officials "may not violate the First Amendment by transferring a prisoner in retaliation for protected conduct";

7

the question is whether the transfer would likely deter a person of ordinary firmness from exercising his First Amendment rights. *See Uzzle v. Boyd*, No. 7:23CV00640, 2025 WL 952251, at *9–10 (W.D. Va. Mar. 28, 2025) (quoting *Jones v. Solomon*, 90 F.4th 198, 214 (4th Cir. 2024)). Here, a transfer that disrupts a prisoner's ability to pursue grievances or access medical care may constitute an adverse action that could deter a person of ordinary firmness.

Even so, Hairston's retaliation claim is deficient in that he does not allege that Clark—or any specific defendant—was personally involved in the decision to transfer him to Martinsville City Jail. Section 1983 liability requires personal participation in the alleged constitutional violation. *Jones*, 90 F.4th at 209 ("[E]ach Defendant may only be held responsible 'for his or her own misconduct.'" (quoting *Iqbal*, 556 U.S. at 677)); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("[L]iability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights." (citation omitted)). Hairston's allegation that the transfer "is a clear reprisal" does not identify who made the transfer decision or what facts support the inference of retaliatory motive by any one defendant. These allegations are insufficient to state a claim.

### b. Hairston's Claims Against Sheriff Wayne Davis

Hairston alleges that Davis, as the official responsible for the operation of the Henry County Adult Detention Center, is liable under § 1983 for violating Hairston's rights. However, § 1983 does not recognize respondeat superior liability. A supervisor may be held liable only if he was personally involved in the constitutional violation, or if the plaintiff can plausibly allege that the supervisor's own action or inaction—such as a policy, practice, or custom, or a deliberate indifference to a known pattern of misconduct—caused the constitutional deprivation. *DePaola v. Ray*, No. 7:12CV00139, 2013 WL 4451236, at *14 (W.D. Va. July 22, 2013) (citing *Shaw v.*

*Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)), *report and recommendation adopted as modified*, No. 7:12-CV-00139, 2013 WL 4453422 (W.D. Va. Aug. 16, 2013). Here, Hairston's allegations against Davis are entirely conclusory. He alleges Davis is responsible for the Henry County Adult Detention Center and violated his rights, but he pleads no facts showing that Davis was personally aware of the assault, the grievance, or the prehearing detention, or that Davis maintained any policy or custom that contributed to Hairston's injuries. The bare allegation that a sheriff is responsible for a facility's operations does not, without more, state a cognizable supervisory liability claim under § 1983.

### 1. Failure to Investigate

There is no standalone constitutional right to an investigation of a complaint or grievance, and "there is no liability under § 1983 for a prison administrator's response to a grievance or appeal." *Brown v. Virginia Dep't of Corr.*, No. 6:07-CV-00033, 2009 WL 87459, at *13 (W.D. Va. Jan. 9, 2009) (citing *George v. Smith,* 507 F.3d 605, 609 (7th Cir. 2007); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba,* 932 F.2d 728, 729 (8th Cir. 1991)). Even if Davis failed to investigate the assault or ignored Hairston's grievance, those failures do not, without more, constitute actionable constitutional violations. This claim fails as a matter of law.

### 2. Transfer to Martinsville City Jail

For the same reasons discussed with respect to Clark, Hairston's claim against Davis based on the transfer to Martinsville City Jail fails. Hairston does not allege facts connecting Davis personally to the transfer decision or establishing that the transfer was the product of a policy or custom attributable to Davis.

### IV.    Conclusion

For the reasons stated above, Defendants' Motion to Dismiss (Dkt. 22) is **GRANTED**. Hairston's claims against Clark and Davis are **DISMISSED WITHOUT PREJUDICE**.

9

Hairston's against Myers, who filed an Answer, proceed. Hairston may file an Amended Complaint providing factual allegations sufficient to support the alleged constitutional violations within 30 days of the date of this Order.

An appropriate Order accompanies this Memorandum Opinion.

Entered:  April 22, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge