CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

June 17, 2026

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
          DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **JERRY LEE HAIRSTON,** | ) | **Case No. 7:24-cv-00434** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **DEPUTY MYERS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Jerry Lee Hairston, a Virginia inmate acting *pro se*, filed this action pursuant to 42 U.S.C. § 1983 alleging federal constitutional claims arising from events that occurred while he was detained at the Henry County Adult Detention Center in Martinsville, Virginia. Dkt. 1. The sole remaining Defendant, Deputy Myers, filed the instant Motion for Summary Judgment (Dkt. 80) which is **DENIED**.

**I.      Standard of Review**

Federal Rule of Civil Procedure 56 requires that the court "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Once the movant properly makes and supports a motion for summary judgment, the opposing party must show that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine dispute of material fact exists, the court views the facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *See Glover v.*

*Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001). On the contrary, the court has an

"affirmative obligation" to "prevent 'factually unsupported claims and defenses' from

proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)

(quoting *Celotex Corp.*, 477 U.S. at 317).

Additionally, under *Scott v. Harris*, 550 U.S. 372 (2007), "when a video 'quite clearly

contradicts the version of the story told by [the plaintiff] . . . so that no reasonable jury could

believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for

summary judgment.'" *Witt v. W. Virginia State Police, Troop 2*, 633 F.3d 272, 276 (4th Cir. 2011)

(quoting *Scott*, 550 U.S. at 378, 380). Thus, at the summary judgment stage, video evidence can

only discredit a nonmovant's factual assertions if the video "blatantly" contradicts the

nonmovant's position. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008) (internal quotation marks

omitted).

## II.    Facts

During the time of the alleged events, Hairston was held at the Henry County Adult

Detention Center on an Emergency Custody Order pending evaluation for conditional release.

Dkts. 1, 82. On April 22, 2024, shortly after 8:00 p.m., Deputy Myers handed Hairston a roll of

toilet paper through the tray slot of Hairston's cell. Dkts. 1, 82. Myers then began distributing

electronic tablets to authorized inmates, including Hairston. Dkt. 1; *see* Dkt. 82. The parties

dispute what happened next.

Hairston alleges in his complaint that he knelt to receive his tablet, which Myers placed

on the tray slot. Dkt. 1. Hairston attempted to get Myers's attention, and Myers responded by

picking up the tablet and tossing it through the tray slot door, striking Hairston in the face. *Id.*;

Dkt. 87. Myers then touched Hairston's hand, which was resting on the tray slot. Dkts. 1, 87.

2

When Hairston asked why Myers was touching him, Myers grabbed Hairston's hand and twisted his arm, forcing Hairston's face to the floor and bending Hairston's arm back to his wrist. Dkts. 1, 87. Hairston tried to pull free, but Myers twisted his arm further before shoving it back through the tray slot. Dkts. 1, 87. According to Hairston, he and Myers did not engage in any conversation, and Hairston was howling in pain during the interaction. Dkts. 1, 87.

Myers, in turn, describes a different series of events. He asserts that he placed the tablet on Hairston's tray slot, which Hairston brought into his cell. Dkt. 82. Hairston then placed the tablet on the tray slot and stuck his left arm out the tray slot door. *Id.* In response, Myers retrieved the tablet, exchanged words with Hairston, and handed the tablet back to Hairston. *Id.* After Hairston refused to remove his arm from the tray slot, Myers tried to push Hairston's arm into the cell. *Id.* Myers then "took hold of Hairston's left wrist and applied an armbar," forcing Hairston's arm back inside the cell. *Id.*

In support of his motion for summary judgment, Myers submitted video footage from outside Hairston's cell. Dkt. 82-1. The video, which has no audio, shows Hairston standing by the tray slot and taking the tablet after Myers sets it down. *Id.* at 01:42–01:46. Myers then walks off camera while Hairston kneels by the door, resting his left hand on the tray slot and holding the tablet. *Id.* at 01:46–02:05. Shortly after, Myers returns and takes the tablet from Hairston. *Id.* at 02:05–02:08. Hairston and Myers appear to exchange words before Myers returns the tablet to the tray slot door. *Id.* at 02:08–02:15. Hairston takes the tablet with his right hand while his left hand remains on the tray slot door. *Id.* at 02:15–02:21. Myers briefly attempts to close the tray slot door before trying to push Hairston's hand back in the cell. *Id.* at 02:21–02:23. When this fails, Myers grabs Hairston's hand and wrist, twisting his arm and shoving it back through the tray slot. *Id.* at 02:23–02:33.

The following morning, Hairston received X-rays and ibuprofen for shoulder and neck pain. Dkts. 1, 82. The X-rays demonstrated "no fracture lytic lesion or blastic abnormality" and no evidence of dislocation appreciable degenerative change. Dkt. 82-3. Nevertheless, Hairston had preexisting rheumatoid arthritis in his shoulders with limited range of motion, Dkts. 41, 74-1 at 1, and he alleges that his injuries have limited the range of motion in his shoulder and neck, that he cannot sleep on his left side, that his shoulder can no longer support his weight for a pushup, and that he experiences persistent pain, Dkt. 1. He brings Eighth and Fourteenth Amendment claims against Myers based on Myers's use of force. *Id.*

### III. Analysis

#### A. Excessive Force

"In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor,* 490 U.S. 386, 394 (1989) (citation omitted). Hairston alleges that Myers's use of force violated the Eighth and Fourteenth Amendments, but "the Eighth Amendment's protections d[o] not attach until after conviction and sentence." *Id.* at 392 n.6 (citations omitted). Instead, as a pretrial detainee, Hairston's excessive force claim is governed by the Due Process Clause of the Fourteenth Amendment, *see Bell v. Wolfish*, 441 U.S. 520, 535 (1979), though conduct that violates the Eighth Amendment also violates the Fourteenth Amendment, *Short v. Hartman*, 87 F.4th 593, 606, 608 (4th Cir. 2023).

The Fourteenth Amendment's Due Process Clause protects pretrial detainees from the use of force that amounts to punishment. *Graham*, 490 U.S. at 395 n.10 (citing *Bell*, 441 U.S. at 535–39). To prevail on an excessive force claim, "a pretrial detainee must show only that the force purposely or knowingly used against [her] was objectively unreasonable." *Kingsley v.*

*Hendrickson*, 576 U.S. 389, 396–97 (2015). This inquiry must be made from the perspective of an officer on the scene and "turns on the 'facts and circumstances of each particular case.'" *Id.* at 397 (quoting *Graham*, 490 U.S. at 396). Factors that bear on the reasonableness of force used include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.*

Hairston's excessive force claim arises from two alleged incidents. First, Hairston alleges that Myers tossed a tablet through the tray slot of his cell, striking Hairston in the face. Second, Hairston alleges that Myers grabbed his hand and twisted his arm through the tray slot, causing him persistent shoulder and neck pain.

I find that the video footage submitted by Myers "blatantly contradict[s]" Hairston's allegation that Myers hit Hairston in the face with the tablet. *Witt*, 633 F.3d at 276 (quoting *Scott*, 550 U.S. at 380). The video captures the entirety of Myers's interactions with Hairston at Hairston's cell door, including when Myers handed Hairston a roll of toilet paper, when Myers distributed the tablets, when Hairston and Myers exchanged words, and when Myers forced Hairston's arm back into his cell through the tray slot. At no point does the video depict Myers tossing the tablet through the tray slot and hitting Hairston. Given the camera angle and continuous coverage, no reasonable jury could conclude that such an event occurred. I therefore adopt the facts as shown in the video and find that Hairston has not established a genuine dispute of fact as to this interaction. *See Scott*, 550 U.S. at 380–81.

As to Hairston's second allegation, it is undisputed that Myers grabbed Hairston's left wrist and applied pressure to his arm to force it back through the tray slot and into Hairston's

5

cell. Myers asserts that his use of force was proportional because Hairston refused to remove his arm from the tray slot and Myers could not push Hairston's arm inside the cell without applying an armbar. Because the video footage was recorded without sound, I cannot determine what, if any, conversation took place between Myers and Hairston. After reviewing the evidence, I find there is a genuine dispute of material fact that precludes granting summary judgment on Hairston's excessive force claim regarding Myers's use of the armbar.

Viewing the record in the light most favorable to Hairston, a reasonable jury could conclude that there was little to no need for force at all, and that the force used was disproportionate to any legitimate security concern. Hairston rested his arm in the tray slot after taking the tablet from Myers, and the video shows no threatening movements and no attempt to grab Myers. Hairston states that he would have removed his arm had Myers simply asked him to do so, but that Myers gave no verbal commands or warnings before initiating physical force. Further, the video footage demonstrates that the interaction between Hairston and Myers escalated quickly. Approximately four seconds after returning the tablet to Hairston, Myers attempted to close the tray slot door. When the door would not close, Myers immediately began pushing Hairston's hand inward. Hairston asserts that once Myers grabbed his hand, he could not retract it. The video is not sufficiently clear to resolve this dispute, and a reasonable jury could find that Hairston was not refusing to comply but was physically unable to once Myers initiated contact. After only two seconds of pushing, Myers escalated to an armbar technique—a maneuver designed to apply significant leverage and pain to force compliance. In total, Hairston was given less than ten seconds to withdraw his arm after receiving the tablet. A jury could conclude that this escalation was objectively unreasonable.

Myers argues that an open tray slot poses a potential security problem, and courts have readily acknowledged the risks associated with unsecured tray slots. Indeed, the video depicts another inmate attempting to grab Myers through his tray slot shortly after the incident with Hairston. Dkt. 82-1 at 02:43–02:44. But the reasonableness inquiry requires assessing the actual circumstances, not abstract dangers. Here, neither party contends that Hairston made any physical or verbal threats; rather, the video shows Hairston's arm resting passively in the opening. Moreover, Myers had just handed Hairston the tablet through the slot without issue, and his conduct does not suggest he feared for his safety at any point. A jury could therefore conclude that Myers was not in immediate danger, and that the generalized risk posed by an open tray slot did not justify the application of an armbar.

Finally, although X-rays taken shortly after the incident showed no acute abnormalities, the absence of a fracture does not preclude a finding of excessive force. Hairston had preexisting rheumatoid arthritis in his shoulders, and he alleges that the armbar exacerbated his condition, limiting his range of motion and ability to support his bodyweight. Hairston received pain medication and states that he continues to experience frequent pain. Courts have repeatedly held that even de minimis injuries can support a claim where the force was gratuitous or disproportionate. *See, e.g.*, *Parker v. Stevenson*, 625 F. App'x 196, 198–99 (4th Cir. 2015) (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010)). Moreover, because the video has no audio, I cannot reject Hairston's assertion that he was howling in pain throughout the maneuver. A reasonable jury could conclude the force used caused more than de minimis injury.

Taking the facts in the light most favorable to Hairston, a reasonable jury could find that Myers used significant force, without warning, against a detainee who posed no immediate threat, who was not actively resisting, and who may have been physically unable to comply once

7

Myers initiated contact. Summary judgment is therefore inappropriate. *Cf. Howard v. Phipps*, No. 7:12CV00079, 2013 WL 5308251, at *10 (W.D. Va. Sept. 20, 2013) (denying summary judgment where plaintiff alleged that defendants "pressed the security box down on his arm without any provocation in a deliberate attempt to injure him").

### B. Qualified Immunity

Government officials are entitled to qualified immunity unless they violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). A right is clearly established only when "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

As discussed, a reasonable jury could find that Myers violated Hairston's Fourteenth Amendment right to be free from objectively unreasonable force. That right was clearly established at the time of the incident. The Fourth Circuit has made clear officers may not use gratuitous force against an inmate that has been subdued or incapacitated. *See, e.g.*, *Dean v. Jones*, 984 F.3d 295, 304–05 (4th Cir. 2021). "[T]he justification for using protective force expires at the very moment a threat is neutralized." *Id.* at 305. Here, considering the facts in the light most favorable to Hairston, Myers had no reason to fear for his safety because Hairston was locked in his cell and had made no attempts to harm Myers through the tray slot. Moreover, it is clearly established that the use of force "maliciously and sadistically" or for the purpose of causing harm is unconstitutional. *Wilkins*, 559 U.S. at 37; *Brooks v. Johnson*, 924 F.3d 104, 113 (4th Cir. 2019). Under Hairston's version of events, Myers applied a painful armbar against a detainee who posed no threat and was not resisting, creating an inference of malicious motive.

No reasonable officer would believe such conduct was lawful. Thus, qualified immunity does not apply.[*]

## IV.    Conclusion

Accordingly, Myers's Motion for Summary Judgment (Dkt. 80) is **DENIED**. An appropriate Order accompanies this Memorandum Opinion.

Entered:  June 17, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

---

[*] Myers relies on *Somers v. Devine*, 132 F.4th 689 (4th Cir. 2025), in which the court found the officer's use of force necessary because of the plaintiff's resistance and refusal to follow orders. However, accepting Hairston's version of the facts in this case, Hairston was never given any orders and would have complied had they been given.